UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
MITSUI O.S.K. LINES, LTD.,                                  :
                                                            :
                              Plaintiff,                    :     17-CV-5588 (JMF)
                                                            :
              -v-                                           :     OPINION AND ORDER
                                                            :
ARCHER-DANIELS-MIDLAND COMPANY,                             :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Mitsui O.S.K. Lines, Ltd. ("MOL") brings this action against Defendant Archer-Daniels-Midland Company ("ADM"), alleging that ADM breached the parties' contract by, among other things, declining to retrieve ADM's cargo after MOL had shipped it from the United States to China and failing to repay MOL for various charges and expenses it incurred in transporting and storing the cargo. (Docket No. 27 ("Am. Compl."), ¶¶ 18-34). ADM now moves, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings, arguing that MOL's damages claims are covered by a general release that the parties executed in March 2016. (Docket No. 30 ("ADM Mem.")). For the reasons that follow, the Court concludes that the plain language of the general release precludes MOL from bringing its damages claims. Accordingly, ADM's motion for judgment on the pleadings is GRANTED.

## BACKGROUND

      The following facts, which are taken from the Amended Complaint unless otherwise noted, are assumed to be true for purposes of this motion. *See, e.g.*, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In July 2013, MOL, an international shipping company

incorporated in Japan, contracted with ADM, a Delaware food processing and export company, to transport several hundred metric tons of yellow corn from the United States to China on ADM's behalf. (Am. Compl. ¶¶ 1-4, 9-10). Four such shipments are relevant here: two November 26, 2013 shipments from Norfolk, Virginia, to Qingdao, China, with bill of lading numbers MOLU26008003061 and MOLU26007490155; one December 12, 2013 shipment from Los Angeles, California, to Qingdao, with bill of lading number MOLU26007189619; and one December 12, 2013 shipment from Los Angeles to Shanghai, China, with bill of lading number MOLU26007372487. (*Id.* ¶¶ 11-14). Those shipments were governed by Service Contract No. US000034M (the "Contract"), as well as applicable tariffs and the bills of lading, which incorporated MOL's standard terms and conditions. (*Id.* ¶¶ 9, 16).

MOL completed the shipments and made the cargo available for pickup in January 2014. (*Id.* ¶ 17). It notified ADM that the cargo had arrived and repeatedly requested that ADM take charge of the cargo, but ADM failed to do so. (*Id.* ¶ 20). MOL was unable to use its shipping containers for other purposes while the cargo sat unattended in Qingdao and Shanghai; eventually, in February or March 2016, it transported the cargo itself to Malaysia for disposal so that it could reclaim use of its containers, incurring expenses for the storage, handling, transportation, and disposal of the cargo. (*Id.* ¶¶ 23-24). ADM failed to compensate MOL for those expenditures or pay Chinese customs fees. (*Id.* ¶¶ 25-27).

On March 8, 2016, the parties entered into an agreement titled "General Release." (Docket No. 28, Ex. 2 ("Release"); *see* Am. Compl. ¶¶ 29-33 (discussing the Release)). The Release begins with three "whereas" clauses (which are later incorporated by reference into the body of the Release) providing as follows:

> WHEREAS, MOL performs various contract transportation services for ADM and had invoiced ADM for the container demurrage and detention charges included in Appendix A (the "Invoices");
>
> WHEREAS, ADM disputes all container demurrage and detention charges in the Invoices;
>
> WHEREAS, the Parties desire to settle, compromise, and forever discharge all claims and charges with respect to the Invoices and any claims, causes of action, charges MOL may have against ADM arising from container demurrage and detention charges and any and all occurrences or activities leading to any other container demurrage and detention charges for shipments sailing prior to 03/08/2016 (the invoices and all demurrage and detention charges for shipments sailing prior to 03/08/2016 may be collectively referred to as the "Released Claims").

(Release 1). Critically, the Release then provides that, in exchange "for good and valuable consideration" (namely, ADM's payment of $190,000), MOL "releases and forever discharges ADM" from various claims. (*Id.*). Specifically, Paragraph 4 of the Release states:

> MOL hereby releases and forever discharges ADM . . . from all claims, demands, actions, causes of action or suits of any kind or nature whatsoever, whether existing, conditional or contingent, whether known or unknown, that MOL . . . had, now has, or may have in the future, in law or in equity, in contract, in tort, or pursuant to statute, related in any way to or arising from the Released Claims. MOL also acknowledges that it has negotiated this Release taking into account such currently unsuspected and unknown damages, losses, costs, and expenses, but expressly waives any right to bring any claims that could have been brought relating to these claims and acknowledges that the scope of the release given includes any such damages, losses, costs, or other expenses.

(*Id.* ¶ 4). Finally, to the extent relevant here, the Release includes an integration clause confirming that the Release "contains the entire agreement between the parties." (*Id.* ¶ 6). Attached to the Release as "Appendix A" is a list of invoices, with columns labeled "Invoice Date," "Detention Invoice Number," "Container Number," "B/L number," and "Original Invoice Amount." (*Id.* at 3). One invoice, dated December 19, 2013, lists 2600718619 in the "B/L number" column; another, dated January 9, 2014, lists 26007372487 in that column. (*Id.*).

3

On July 21, 2017, MOL initiated this suit. (Docket No. 1). In its initial Complaint, MOL alleged that it had "sustained out of pocket damages relating to the storage, handling, transportation, and disposal of the cargo, damages in the form of loss of use, demurrage and/or detention." (*Id.* ¶ 25). That Complaint, however, made no reference to the Release. After ADM answered and moved for judgment on the pleadings, citing the Release, MOL filed the Amended Complaint. (*See* Docket Nos. 16, 18, 23, 27). The Amended Complaint includes two claims. First, MOL continues to seek damages relating to the shipments at issue, which it divides into "Expenses" (defined as "expenses relating to the storage, handling, transportation, and disposal of the Cargo," (Am. Compl. 9)) and "Liquidated Damages" (defined as "liquidated damages in the form of demurrage and/or detention charges," (*id.* ¶ 25)). Second, under the header "Arbitration," it seeks a declaration from the Court "that it is not obligated to arbitrate any portion(s) of the claim that is the subject matter of this litigation." (*Id.* ¶ 46). The Amended Complaint, however, also addresses the Release. Specifically, it asserts that the Release "exclusively contemplated and was limited to ADM's outstanding demurrage and detention charges incurred on containers involved in a U.S. domestic repositioning program" and is thus not applicable to the shipments and MOL's claimed expenses in this suit. (*Id.* ¶¶ 30, 32). This motion followed.

## LEGAL STANDARDS

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that governing motions to dismiss under Rule 12(b)(6). *See, e.g.*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). That is, the plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that offers only "labels and conclusions" or

4

"a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  In deciding a Rule 12(c) motion, a court "may only consider the complaint itself and documents that are attached to it, incorporated by reference, or on which the complaint heavily relies." *Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-CV-6276 (AJN), 2017 WL 6942744, at *2 (S.D.N.Y. Sept. 22, 2017), *reconsideration denied*, 2018 WL 401511 (S.D.N.Y. Jan. 12, 2018); *see also, e.g.*, *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (noting that a court may consider a document in evaluating a motion for judgment on the pleadings if the complaint "relies heavily upon its terms and effect" and the document is thus "integral" to the complaint).  Generally speaking, a court must assume all of the plaintiff's "factual allegations to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  "If, however, the allegations in the complaint are contradicted by the very documents upon which they are based . . . , it is well established that 'the document[s] control[ ] and the allegation[s are] not accepted as true.'" *Buckley v. City of New York*, No. 17-CV-0224 (JMF), 2018 WL 264114, at *3 (S.D.N.Y. Jan. 2, 2018) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) (per curiam)).

## DISCUSSION

The primary question presented by ADM's motion is whether the Release — which is incorporated by reference in the Amended Complaint and thus may be considered here — bars MOL's claim for damages.  The parties appear to agree that, pursuant to a choice-of-law provision in the Release, Illinois law governs that question.  (*See* ADM Mem. 8; Docket No. 35 ("MOL Opp'n"), at 9 & n.1).  In any event, the relevant legal standards do not differ materially under admiralty, New York, and Illinois law.  (*See* ADM Mem. 8-10 (cataloguing the relevant standards for interpreting contracts and determining whether consideration of parol evidence is

5

appropriate under admiralty, New York, and Illinois law); MOL Opp'n 9 n.1 (agreeing that "the relevant New York law is similar to Illinois")). Accordingly, it is unnecessary for the Court to resolve whether the Release constitutes a maritime contract or to conduct any further choice-of-law analysis. *See, e.g.*, *CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 382 n.8 (2d Cir. 1982) ("Since New York law in this regard is the same as the generally prevailing principles we need not reach the question whether a choice of law provision in a maritime contract must be given effect by the courts.").

Under Illinois law, a "release is a contract, and therefore is governed by contract law." *Farm Credit Bank of St. Louis v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). "When determining the intentions of the parties, a reviewing court should first consider the plain and ordinary meaning of the contractual language, which is the best indication of the parties' intentions." *Farmers Auto. Ins. Ass'n v. Wroblewski*, 887 N.E.2d 916, 923 (Ill. App. 2008). Where a release is "clear and explicit, a court must enforce the agreement as written," and "[b]oth the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984); *see also Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) (applying Illinois law to conclude that "[w]here a contractual release is clear and explicit, we must enforce it as written"). Further, where a contract has an "integration clause," as the Release does, that "is a clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 886 (Ill. 1999).

These principles apply to contractual releases such as the Release in this case. *See, e.g.*, *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009) ("Where a contractual release is

6

clear and explicit, we must enforce it as written [under Illinois law]."); *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011) ("[A] valid release [under New York law] constitutes a complete bar to an action on a claim which is the subject of the release . . . . If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties." (internal quotation marks and citations omitted)). Indeed, "determining whether particular language constitutes a general release is entirely a matter of construing that language." *Gallagher v. Lenart*, 874 N.E.2d 43, 60 (Ill. 2007). That said, "where a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made." *Carona v. Illinois Cent. Gulf R. Co.*, 561 N.E.2d 239, 242 (Ill. App. 1990); *accord Whitehead v. Fleet Towing Co.*, 442 N.E.2d 1362, 1365 (Ill. App. 1982).

Applying the foregoing principles here, the Court is compelled to conclude that MOL's damage claims in this case are barred by the Release. MOL broadly agreed to release ADM from "all claims, demands, causes of action or suits of any kind or nature whatsoever, whether existing, conditional or contingent, whether known or unknown, that MOL . . . had, now has, or may have in the future, in law or in equity, in contract, in tort, or pursuant to statute, related in any way to or arising from the Released Claims." (Release ¶ 4). "Released Claims" is defined broadly, in turn, to include not only the invoices set forth in Appendix A to the Release, but also "all demurrage and detention charges for shipments sailing prior to 03/08/2016." (*Id.* at 1). And that is precisely what MOL seeks in this case: compensation for various expenses and charges, including detention and demurrage charges, that MOL incurred in connection with four shipments prior to March 8, 2016. (Am. Compl. ¶¶ 18-34)). In short, the Release, on its face, is "written in extremely broad terms" and "plainly covers" MOL's damages claims. *Pierce*, 65

7

F.3d at 568. That is, the detention and demurrage charges listed in the Amended Complaint are explicitly included in the category of Released Claims, and the remaining expenses listed in the Amended Complaint, including Chinese customs charges and the cost of transporting and disposing of the cargo, are "related in [some] way or aris[e] from the Released Claims." (*Id.*).

MOL's allegations and arguments to the contrary fall far short. MOL contends that the references to specific invoices in the preamble and Appendix A to the Release may reasonably be read to limit the scope of the Release to those invoices. (*See* MOL Opp'n 9-10). In support of that argument, MOL cites Illinois cases in which references to specific claims were ambiguously paired with language indicating a more general settlement of disputes between the parties and the releases were construed narrowly to cover only the specific claims. (*See id.* (citing, among other cases, *Carona v. Ill. Cent. Gulf R. Co.*, 561 N.E.2d 239, 242 (Ill. App. 1990)). In each of those cases, however, the release "contain[ed] *conflicting* release provisions that express[ed] different intentions," such as contradictory language pointing to both a general release of all claims and a specific release of particular claims. *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. 1997) (emphasis added); *see also, e.g.*, *Whitehead v. Fleet Towing Co.*, 42 N.E.2d 1362, 1365 (Ill. 1982). Here, by contrast, no such contradiction or ambiguity appears. To be sure, the preamble (and Appendix A) do reference certain specific invoices. But "Released Claims" are defined, in the conjunctive, as "the invoices *and* all demurrage and detention charges for shipments sailing prior to 03/06/2016." (Release 1 (emphasis added)). Moreover, the third "whereas" clause, again using the conjunctive, provides that the parties "desire to settle, compromise, and forever discharge all claims and charges with respect to the Invoices *and* any claims, causes of action, charges MOL may have against ADM arising from container demurrage and detention charges *and* any and all occurrences or activities leading to

8

any other container demurrage and detention charges for shipments sailing prior to 03/08/2016."
(*Id.* (emphasis added)). Finally, MOL agreed to release "all claims . . . *related in any way to or arising from* the Released Claims." (*Id.* ¶ 4). In short, these broad provisions leave no room for doubt and create no ambiguity: MOL's claims are covered by the Release.'

Moreover, MOL's alternative construction of the scope of the Release — to wit, that it is limited to charges and expenses relating to a domestic U.S. repositioning program (MOL Opp'n 13, 15-18; *see also* Am. Compl. ¶¶ 30, 32) — is not tenable. Put simply, there is nothing in the Release from which the Court could conclude that the parties intended to so limit the universe of released claims. Indeed, it is implausible that the parties — both of whom are sophisticated commercial entities — would have drafted a sweepingly broad release to address only a narrow subset of "U.S. repositioning" claims, without including a single reference to that program within the four corners of the agreement.[1] And MOL introduces no extrinsic evidence (let alone extrinsic evidence that the Court may consider on a motion for judgment on the pleadings) — such as objective evidence "supplied by disinterested third parties such as custom or trade usage," which "the parties to a contract have a limited ability to fabricate" — from which the Court could conclude that the parties "couldn't have meant what they seem to have said."

---

[1] In fact, MOL's construction is seemingly belied by the fact that the bills of lading for two of the four shipments at issue in this case — which were not part of any domestic U.S. repositioning program — are explicitly listed in the column of Appendix A to the Release titled "B/L number." (Release 3; *see* ADM Mem. 11). Relying on extrinsic evidence, MOL asserts that the use of the term "B/L number" in Appendix A "was a misnomer, as the numbers contained in that column in the spreadsheet actually represents MOL's booking number." (MOL Opp'n 12 n.2; *see also id.* at 6 (calling the use of the term "not accurate"); *id.* at 17 (stating that the column is "mislabeled")). But the Court may not consider the extrinsic evidence upon which MOL relies. *See, e.g.*, *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). And in any event, the issue is ultimately irrelevant given that the definition of "Released Claims" unambiguously includes not only "the Invoices," but also "all demurrage and detention charges for shipments sailing prior to 03/06/2016," (Release 1), and given that MOL broadly released all claims "related in any way to or arising from the Released Claims," (*id.* ¶ 4).

9

*Pierce*, 65 F.3d at 568. That is, this is not a case in which trade usage or some other objective evidence requires a reading of the agreement distinct from the plain English understanding of its terms, and MOL does not argue that it is. Instead, MOL seeks to submit precisely the kind of subjective evidence — its own "self-serving testimony" — that Illinois courts do not consider when interpreting an apparently unambiguous contract "because it is easily concocted and difficult to verify." *Id.*; *see also Hampton*, 561 F.3d at 715 ("[T]hese extrinsic circumstances do not affect the plain meaning of the Waiver's language and provide us with no reason to believe that the parties 'couldn't have meant what they seem to have said.'").

In short, because the Release is unambiguous in its scope, the Court must "enforce the agreement as written," "without the assistance of parol evidence or any other extrinsic aids." *Rakowski*, 472 N.E.2d at 794. And, as written, the Release plainly bars MOL's damages claims in this case. It follows that MOL's second claim — for "Arbitration" — should also be dismissed. To the extent that MOL seeks a declaration that ADM may not pursue arbitration in connection with whether it breached the Contract, the issue is mooted by the Court's conclusion that MOL's breach claims are barred by the Release. (*See* ADM Mem. 19 ("[I]f the Court grants ADM's motion for judgment on Count One, any future question of whether the breach of contract claim may be decided in the arbitration will be moot.")). To the extent that MOL seeks a declaration that ADM may not pursue arbitration in connection with any related claim (for example, a claim for attorney's fees for this litigation), the issue is either moot or not ripe, as ADM has demonstrated through both word and deed that there is no non-speculative basis to believe that it will seek to compel arbitration under the Contract. (*See id.* at 17-18). In either case, the Court lacks jurisdiction to grant MOL relief. *See, e.g.*, *Thomas v. City of N.Y.*, 143 F.3d 31, 34 (2d Cir. 1998); *Spirit Realty, L.P. v. GH & H Mableton, LLC*, 227 F. Supp. 3d 291, 297

(S.D.N.Y. 2017). In the alternative, the Court would exercise its discretion to decline to entertain the claim. *See, e.g.*, *Mahoney v. Sony Music Entm't*, No. 12-CV-5045 (LAK), 2012 WL 6757252, at *1 (S.D.N.Y. Aug. 13, 2012).

## CONCLUSION

For the foregoing reasons, ADM's motion for judgment on the pleadings is GRANTED, and the Amended Complaint is dismissed in its entirety. The Clerk of Court is directed to terminate Docket No. 29 and to close the case.

SO ORDERED.

Date: August 16, 2018
New York, New York

JESSE M. FURMAN
United States District Judge